272 P.2d 319

**WILSON v. WILSON.**

No. 5733.

Supreme Court of New Mexico.

June 24, 1954.

412

Gore & Nieves, Clovis, for appellant.

Howard F. Houk, Santa Fe, Amicus Curiae.

McGHEE, Chief Justice.

The plaintiff, Neil W. Wilson, sued his wife, Shirley R. Wilson, for divorce on the ground of incompatibility. The plaintiff, at the time this action was brought, was serving in the United States' Air Force and stationed at Clovis Air Force Base, Curry County, New Mexico, and had been continuously there stationed for a period of one year immediately prior to the bringing of the action. It was brought under the 1951 amendment to § 25–704, N.M.S.A., 1941 Comp., Ch. 107, Laws of 1951. The entire section, as amended, reads as follows:

"The plaintiff in action for the dissolution of the bonds of matrimony must have been an actual resident, in good faith, of the state for one (1) year next preceding the filing of his or her complaint; Provided, however, that in a suit for the dissolution of the bonds of matrimony wherein the wife is plaintiff, the residence of the husband in this state shall inure to her benefit and she may institute such action setting up any of the causes mentioned in section 2773 (25–701) immediately after the accrual thereof, providing her husband shall have been qualified as to residence to institute a similar action; *and provided further,*

*persons serving in any military branch of the United States government who have been continuously stationed in any military base or installation in the state of New Mexico for such period of one (1) year, shall for the purposes hereof, be deemed residents in good faith of the state and county where such military base or installation is located.*" (Italics supplied.)

The italicized portion of the above section was added by the 1951 amendment.

The defendant entered her formal appearance and waiver of service of process, and she does not appear before this Court. At the trial of the cause, the lower court upon its own motion dismissed the plaintiff's complaint after finding the fact of military service as set out above, that the parties were married in Wyoming in 1951, that incompatibility existed between them, that there were no children of the marriage, that the parties had acquired no community property, and, finally, that the home of the plaintiff was in Salt Lake City, Utah. The conclusions of law made by the lower court were:

"I. That this Court does not have jurisdiction of the parties plaintiff or defendant.

"II. That Chapter 107, of the New Mexico Session Laws of 1951, appearing at Section 25–704 of the New Mexico Statutes, 1941 compilation, is

contrary to Section 4, Article 7, of the Constitution of the State of New Mexico, and as such is void.

"III. That plaintiff's complaint should be dismissed."

So far as pertinent, Article 7, New Mexico Constitution, provides:

"Elective Franchise

"§ 1. (*Qualifications of voters— School elections—Registration.*)—Every male citizen of the United States, who is over the age of twenty-one years, and has resided in New Mexico twelve months, * * *.

"§ 2. (*Qualifications for holding office.*)—Every citizen of the United States who is a legal resident of the state and is a qualified elector therein, shall be qualified to hold any public office in the state * * *.

"§ 3. (*Religious and racial equality protected—Restrictions on amendments.*)—The right of any citizen of the state to vote, hold office, or sit upon juries, shall never be restricted, abridged or impaired on account of religion, race, language or color, * * *.

"§ 4. (*Residence.*)—No person shall be deemed to have acquired or lost residence by reason of his presence or absence while employed in the service of the United States or of the state, nor while a student at any school.

"§ 5. (*Election by ballot—Plurality elects candidate.*)—All elections shall be by ballot, and the person who receives the highest number of votes for any office shall be declared elected thereto."

It is probable the trial court was influenced to declare Ch. 107, Laws of 1951, in violation of Art. 7, § 4, supra, by the language of this Court in Allen v. Allen, 1948, 52 N.M. 174, 194 P.2d 270, 273, where it is said:

"There is apparently no question that the appellee actually lived, and continued to live in this state during the required period. The dispute is about whether such dwelling or living here constituted him a bona fide resident in the use of that term in the statute. We are of the opinion that it did not.

"Article 7, Section 4, of the New Mexico Constitution provides: * * *.

"However, this section of the constitution does not mean that a soldier stationed in this state may not acquire residence in this state, but it does mean that he may not acquire a residence from the mere fact that he was stationed therein for whatever period of time he may be so stationed. Apart from that service he must establish a

residence in the state with the intention of making it his permanent residence."

The Allen case arose under § 25–704 before the 1951 amendment, and under such earlier statute, the words "actual resident, in good faith" were considered to refer to domicile. Therefore, under the law of this state as it then existed, the result of the Allen case was in accordance with the very general rule and the rule of the common law regarding acquisition of domicile by one in military service, and decision was made in accordance with such principles, rather than under the constitutional provision, Art. 7, § 4, supra.

Zimmerman v. Zimmerman, 1945, 175 Or. 585, 155 P.2d 293, contains a scholarly analysis of a constitutional provision in Oregon, Art. II, § 4, which the Oregon court therein declared to be substantially identical with our Art. 7, § 4. The Oregon provision is:

"Residence. For the purpose of voting, no person shall be deemed to have gained, or lost a residence, by reason of his presence, or absence while employed in the service of the United States, or of this State; nor while engaged in the navigation of the waters of this State, or of the United States, or of the high seas; nor while a student of any Seminary of Learning; nor while kept at any alms house, or other assylum (sic), at public expence (sic); nor while confined in any public prison."

Many other states are listed in the Zimmerman opinion as having like constitutional provisions, and in three cases discussed in the course of the opinion from such other states, likewise involving divorce proceedings, the constitutional provisions were held to go solely to the matter of gaining or losing residence for voting purposes, or by absence of mention were apparently deemed not applicable. Hawkins v. Winstead, 1943, 65 Idaho 12, 138 P.2d 972; Trigg v. Trigg, 1931, 226 Mo. App. 284, 41 S.W.2d 583, and Kankelborg v. Kankelborg, 1939, 199 Wash. 259, 90 P.2d 1018. Parenthetically, it should be mentioned the last two of these cases were cited in the Allen case in support of the conclusion there reached.

While the Oregon provision set out above contains the express limitation, "For the purpose of voting," and such limitation is absent from the provision before us, the Oregon court was also concerned with Art. II, § 5, Oregon Constitution, to-wit:

"No soldier, seaman, or marine in the Army, or Navy of the United States, or of their allies, shall be deemed to have acquired a residence in the state, in consequence of having been stationed within the same; nor

shall any such soldier, seaman, or marine have the right to vote."

This section, not being expressly limited to the right to vote was held not to preclude the acquisition of residence (domicile) by one within the state on military assignment, but only to declare that such person could not acquire residence (domicile) by that fact alone.

We are asked to determine whether our constitutional provision, which contains within itself no limitation such as "For the purpose of voting," prevents our legislature from declaring a person continuously stationed within this state for a prescribed length of time upon military assignment shall be deemed a resident in good faith of this state for the purposes of § 25–704, supra.

As noted above, the Oregon court compared our constitutional provision to its Art. II, § 4, which was limited to voting, and not to its Art. II, § 5, where the language was general. We entertain no reluctance to declare such construction to be valid. Housed as our provision is, in an article of our Constitution where every other section is limited to and concerned with the elective franchise, elections and the right to hold office (with the exception of a lone reference to the right to serve upon juries, Art. 7, § 3), we can only conclude it was the intention of the framers that § 4 likewise had to do with residence for the purpose of voting, or holding office, despite its seeming general content when standing alone. That this determination is correct is also borne out by the painstaking study made by appellant's counsel of the procedure of the Constitutional Convention of this state, and the work of the Committee on Elective Franchise. "Proceedings of the Constitutional Convention of the Proposed State of New Mexico."

Therefore, our legislature may constitutionally confer the status of resident for divorce purposes upon those continuously stationed within this state by reason of military assignment. Chaney v. Chaney, 1949, 53 N.M. 66, 70, 201 P.2d 782. See Craig v. Craig, 1936, 143 Kan. 624, 56 P.2d 464 and annotation in 21 A.L.R.2d 1163, at p. 1179, § 12.

Although the trial court concluded it did not have jurisdiction of the parties to this action, unquestionably it did have, as the plaintiff appeared personally and the defendant had, as heretofore noted, entered her appearance of record. The court found the plaintiff had been continuously stationed at the Clovis Air Force Base for a period of one year immediately prior to filing this action, which fact meets the exact requirement set forth in the 1951 amendment to § 25–704, supra, for the institution of such action. Consequently it was error for the lower court to dismiss

the plaintiff's complaint, and the cause is reversed and remanded with direction to the lower court to reinstate plaintiff's complaint and proceed accordingly. It is so ordered.

SADLER, COMPTON, LUJAN and SEYMOUR, JJ., concur.